## WOODS, Housing Expediter, v. SARETELLA.

### No. 9611.

United States Court of Appeals
Seventh Circuit.

Nov. 18, 1948.

Ed Dupree, Gen. Counsel, Hugo V. Prucha, Asst. Gen. Counsel, and Nathan Siegel, Atty., Office of the Housing Expediter, all of Washington, D. C., and William S. Kaplan, Office of the Housing Expediter, of Chicago, Ill., for appellant.

Philip R. Toomin, of Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and SPARKS, Circuit Judge, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The Housing Expediter appeals from a judgment of the District Court denying the injunction and rental refund sought by him for alleged violation of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq., and the Housing

---

and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq. The facts were stipulated, and from those facts the court concluded that there was no legal basis for a finding that appellees had violated or were threatening to violate the Acts or any of the regulations promulgated thereunder, hence no basis for the relief sought.

The controversy arose out of a transaction whereby appellee Saretella, wishing to purchase a three-story and basement residence for conversion into apartments, but unable to finance the purchase, obtained $6400 to be used in the purchase and conversion from five persons desirous of renting apartments in the converted building. In accordance with the plan adopted, the following amounts were placed in escrow by the parties named, to whom we shall hereafter refer, as indicated, in accordance with the space subsequently occupied by each:

$3000 by Carl Humes and
Kenneth Cramer......First Floor
2700 by Celia Wechter.....Second Floor
600 by Guy Munger.........Basement
100 by Edward Bezazian....Third Floor

The deposits were conditioned upon the consummation of the purchase and remodeling of the building by Saretella, and leasing the various portions of it to the depositors as agreed upon for a term of three years in the case of the first three, and one year for the last named depositor. The plan was carried out; the property was purchased and remodeled; and approximately half of the $6400 deposited was used for remodeling and furnishing as follows:

$ 800—First floor
1450—Second floor
750—Basement
230—Third floor

The reconversion was completed on or about November 1, 1946, at which time all the tenants moved into their various apartments. The leases provided for rentals and return of deposits as follows:

"First floor: Deposit $3,000.00; Rental $300.00 per month, for three years, with deposit returnable by application of rent the last ten months of the lease;

"Second floor: Deposit $2,700.00; Rental $150.00 per month, for three years, with deposit returnable by application of rent the last eighteen months of the lease;

"Basement: Deposit $600.00; Rental $50.00 per month, for three years, with deposit returnable by application of rent the last twelve months of the lease;

"Third floor: Deposit $100.00; Rental $50.00 per month, for one year, with the deposit returnable by application of rent the last two months of the lease."

It was further stipulated that if the tenants had not been willing to make the advances described for Saretella, to be used by him in the purchase of the premises, he would have been unable to finance the purchase and thereafter remodel and convert the premises for the use of the tenants, and that the rentals fixed in the leases were thereafter registered with and approved by the Office of Price Administration. On March 31, 1947, appellee Jackson entered into a purchase contract with Saretella, subject to the rights of the tenants under the leases, and upon consummation of the contract, she received a credit for the amount of the deposits against the amount due under the contract.

The court concluded that under the facts as stipulated, appellees did not receive or retain such security deposits as were prohibited under the Act. He construed the transaction as a joint adventure whereby funds furnished by the tenants and sums furnished by Saretella were deposited in escrow for the purchase and remodeling of the premises and the tenants were assured of receiving and did receive leasehold estates covering various portions of the premises, and Saretella secured the fee title to the premises subject to the leasehold estates of the tenants; and that such joint adventure did not come within or constitute a violation of the provisions of the Act of 1942 as amended, or of the Act of 1947, or any of the regulations in regard to those Acts.

The Rent Regulation in effect at the time the transaction took place provided

as follows, with respect to security deposits:

"Regardless of any contract, agreement, lease or other obligation heretofore or hereafter entered into, no person on or after September 1, 1944, shall demand or receive a security deposit for or in connection with the use or occupancy of housing accommodations within the Defense-Rental Area or retain any security deposit received prior to or on or after September 1, 1944, except as provided in this paragraph (d). The term 'security deposit,' in addition to its customary meaning, includes any prepayment of rent except payment in advance of the next periodic installment of rent for a period no longer than a month."

The Housing Expediter contends that the deposits here involved are expressly prohibited by the foregoing regulation, and that the refusal of the court to apply the express terms of the regulation constitutes, in effect, a ruling of the invalidity of such regulation which it has no authority under the Emergency Price Control Act to render. We do not agree. In our view, the ruling of the court means only that the facts here presented do not constitute a violation of the regulation.

We construe the definition of "security deposit" to apply to all deposits made for the purpose of securing performance of the conditions of a lease. We think deposits not intended for security purposes were not intended to come within the definition. Here the purpose of making the advances was, according to the stipulation of facts, to enable Saretella to purchase residence property not then suitable for multiple housing, and by certain remodeling and repairs, to make it available for such purposes, which project he was unable to carry out without the advances. Thus the transfer of funds in escrow was for the mutual benefit of the prospective tenants and Saretella, bringing new housing units into existence and making them available for the tenants, and enabling Saretella to become the owner of the property. To the extent that this was mutually advantageous to them, we think the court was justified in using the term "joint adventure" which appellant finds objectionable. This was not, of course, the usual commercial venture to which the term customarily applies, with a sharing of profits or losses. However, we think the description is not inappropriate—certainly it appears more appropriate than the definition of the advances here involved as security deposits. The fact that they were returnable by way of application to the rentals for the final months of the lease term in each case does not appear to be of controlling significance under the facts here involved. Hence we find no error in the judgment of the court denying the Administrator's suit for injunction and reimbursement.

Judgment affirmed.